Opinion by
 

 Spaulding, J.,
 

 This is an appeal by Donald Edward Allen, appellant, from his conviction by a jury in the Court of Oyer and Terminer of Dauphin County of the crime of aggravated robbery.
 

 On February 26, 1966, two armed men entered and robbed the Acme Food Market on South Cameron Street in Harrisburg. The felons were in the store for approximately 10 to 12 minutes, during which time three employes observed them for various intervals. A witness outside the store identified the motor vehicle allegedly driven by one of the gunmen and an investigation revealed that the car belonged to one August Shartner. Appellant was listed as a suspect because of his association with Shartner. A prior penitentiary photograph of appellant was shown to the several employes of the store, who were later requested to pick the suspect from a lineup at a police station and identify him at the preliminary hearing. These same em
 
 *316
 
 ployes were present at the arraignment of appellant and subsequently identified him at trial.
 

 In the course of appellant’s trial the district attorney called as a witness one of the employes present during the commission of the crime, who, after identifying appellant in court, testified that he had identified him previously from “mug shots.” Appellant’s counsel immediately objected and moved for withdrawal of a juror. His objection was sustained but the request for the withdrawal of a juror was denied, although the trial judge cautioned the jury that they could infer nothing from the reference to “mug shots” since “[t]he police have access of [sic] photographs from many sources.”
 

 Other errors allegedly were committed by the Commonwealth in the cross-examination of defense witnesses, but we find none of these have sufficiently prejudiced appellant to warrant a new trial. We do find, however, that the reference to “mug shots” was not “harmless” error as averred by the Commonwealth, but so harmful that a new trial must be awarded.
 

 As we stated in
 
 Commonwealth v. Trowery,
 
 211 Pa. Superior Ct. 171, 235 A. 2d 171 (1967) : “It is almost too axiomatic to repeat the well-established common law rule that, in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged.” (at 173) In that case, the objectionable circumstance was the actual introduction into evidence of the mug shots, or, as they were there designated, “rogues gallery” photographs. The Commonwealth argues that the fact that the mug shots were, in the instant case, neither introduced into evidence nor otherwise shown to the jury is a distinguishing factor which
 
 *317
 
 permits a result contrary to that reached in
 
 Trowery.
 
 This contention completely misapplies the rationale underlying
 
 Trowery
 
 and the plethora of cases
 
 *
 
 of similar nature, for it is not only the introduction into evidence of the actual criminal record of the accused or some other physical manifestation of it that is proscribed. It is, rather, the reference, however oblique, to that record from which it is likely that the jury may conclude that such a record exists, in the instant case occurring when the witness mentioned the “mug shots” even though they were not introduced into evidence. The Commonwealth’s position that the likelihood of prejudice is vitiated by the fact that only
 
 mention
 
 of the mug shots was made rather than their actual admission is demonstrably unresponsive to the dangers with which the rule excluding such evidence deals.
 

 The Commonwealth also contends, as it did in
 
 Trowery,
 
 that this is an exception to the general rule prohibiting such evidence because it “relates to identification of the person responsible for the crime. That is, evidence which demonstrates in what manner the defendant was identified so that he could be apprehended and brought to trial . . . .” We explicitly rejected that contention in
 
 Trowery
 
 and now do so again, for it does not accurately either state or apply the essence of the exception. “This [to prove identity] is accepted as one of the ultimate purposes for which evidence of other criminal conduct will be received. It is believed, however, that a need for proving identity is not ordinarily of itself a ticket of admission, but that the evidence will usually follow, as an intermedi
 
 *318
 
 ate channel, some one or more of the other theories here listed.” McCormick, Evidence, p. 330 (1954) (footnotes omitted).
 

 The above reference to “other theories” generally includes three. The first is the establishment of the existence of a larger continuing plan or scheme of which the present crime is a part.
 
 E.g., State v. Long,
 
 195 Ore. 81, 244 P. 2d 1033 (1952), where proof that defendant, now on trial for killing a truck owner, the next day, while leaving a robbery committed with the use of the truck, shot an E.B.I. man, was properly admitted as proving part of a planned course of action. Second, to prove the existence of other like crimes by the accused so nearly identical in method as to ear-mark them as his handiwork. For example,
 
 Rex v. George Joseph Smith
 
 (1915), reported in Notable British Trials (1922), where the defendant, then accused of murdering his wife, who had left her property to him, by drowning her in the bathtub, left the boarding house on a pretended errand and on his return home purportedly discovered his wife drowned in the tub. It was there held proper to show that defendant had previously had several wives who had left their property to him and were subsequently discovered by him drowned in the bath. Finally, such evidence may be used to establish motive.
 
 State v. Long, supra,
 
 where the defendant a short time after the murder of the truck owner used the truck to commit a robbery.
 

 This conclusion is reflected in the case of
 
 Commonwealth v. Burger,
 
 195 Pa. Superior Ct. 175, 171 A. 2d 599 (1961) (per curiam affirmance on the opinion of the trial court which is quoted in the Reports), where appellant alleged error in the admission of evidence of other crimes allegedly committed by him. The disputed evidence there related to the cashing by appellant of certain checks and drafts after having been fraudu
 
 *319
 
 lently executed and endorsed. The defendant was identified as the person who cashed the checks although he was not then on trial for that offense. This evidence was permitted since there were no eyewitnesses to the burglaries charged, and proof of possession was a necessary and logical connecting link to those crimes' for which he was being charged. In the instant case, no such logical connection can be established to justify the reference to the mug shots.
 

 The abundance of testimony relating to identification, stemming from both the lineup and arraignment, leaves no justification for the Commonwealth’s position that appellant’s intent to produce alibi witnesses dictated the use of “every means at its disposal in an effort to establish with the utmost certainty the identity of the defendant.” It is tautological that only those means which are legitimate may be used by the Commonwealth in any instance.
 

 Reversed and remanded for a new trial.
 

 Weight, P. J., and Watkins, J., would affirm on the opinion of Judge Bowman for the court below.
 

 *
 

 E.g., Shaffner v. Commonwealth,
 
 72 Pa. 60, 13 Am. Rep. 649 (1872) ;
 
 Commonwealth v. Burdell,
 
 380 Pa. 43, 110 A. 2d 193 (1955) ;
 
 People v. Molineux,
 
 168 N.Y. 264, 61 N.E. 286 (1901) ;
 
 Quarles v. Comm.,
 
 245 S.W. 2d 947 (Ky., 1951).