UNITED STATES of America ex rel.
William Mack BRADFORD

v.

Alfred T. RUNDLE, Supt. State Correctional Institution, Graterford, Pennsylvania.

Misc. No. 3801.

United States District Court
E. D. Pennsylvania.

Feb. 25, 1969.

James F. Bell, III, King of Prussia, Pa., for petitioner.

Arlen Specter, Dist. Atty., by Roger F. Cox, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION AND ORDER

WOOD, District Judge.

Relator was convicted of aggravated robbery for taking $70.25 from a bar and sentenced to a prison term of from five to ten years. His *pro se* motion for a new trial was denied by the trial court. Relator then filed a *pro se* brief in the Superior Court, and after argument at which he was represented by court-appointed counsel, his sentence and conviction were affirmed. See Commonwealth v. Bradford, 209 Pa.Super. 761, 230 A.2d 926 (1967). Petition for allocatur to the Supreme Court of Pennsylvania was denied. Relator now appeals to this Court for a writ of habeas corpus on the following grounds: that he was denied effective assistance of counsel; that he was convicted solely as a result of the testimony of the bartender who allegedly perjured himself at trial and wilfully suppressed the testimony of two witnesses; that allusions

of the bartender to being shown "mug shots" of relator at "8th and Race" was so harmful that his trial was unfair; that he was subject to what was in effect a one-man line-up; and, finally, that a police detective's reference to a "statement" given by relator had an inculpatory impact on the jury because it was not explained that the statement in fact fully denied guilt. For reasons to be considered, we have decided to grant the writ because we think under all the circumstances that relator was substantially prejudiced by the late appointment of counsel. Although we do not reach the other grounds raised by relator, we consider them to be questions that might well have been pursued had counsel been appointed earlier and had more time to prepare this case.

Relator's claim that the late appointment of counsel denied him effective assistance must be governed by the recent decisions of the Third Circuit in United States ex rel. Mathis v. Rundle, 394 F.2d 748 (1968) and United States ex rel. Chambers v. Maroney, 408 F.2d 1186 (1969), No. 17219, filed January 22, 1969. It is the conclusion of the Court in these cases that where appointment of counsel takes place so close to trial that it is inherently prejudicial to relator's defense, that a *prima facie* case of denial of effective assistance of counsel is made out, and the burden of proving absence of prejudice shifts to the prosecuting authorities. This "prima facie ineffectiveness or the inherent prejudice due to late appointment of counsel may properly be overcome *either* by evidence produced by the state in an evidentiary hearing that there was no prejudice, or by *affirmative* proof *otherwise* appearing in the record demonstrating that the appellant (i. e. relator) was not prejudiced."

In the instant case, as in *Mathis* "trial counsel, a voluntary defender, was assigned to the case by his office the night before the trial. His trial preparation [1] involved review of the notes of a

---

[1]. Relator's appointed counsel testified before us that he had "no present independent recollection" of when he initially reviewed relator's file, but testified that

colleague, who had previously interviewed the petitioner in that case * * " *Chambers, supra,* fn. 8; also *Mathis, supra,* 394 F.2d 749. Therefore, a prima facie case was made out, and the burden of proving the absence of prejudice shifted to the prosecuting authorities.[2] In order to give the Commonwealth a full opportunity to show absence of prejudice, we held an evidentiary hearing and permitted the Commonwealth to file a reply brief. However, after a review of the entire record of this case, we have concluded that relator was prejudiced in several substantial respects by the late appointment of counsel.

■ Firstly, it is clear that relator was dissatisfied with the manner in which the Defender's Association was prepared to try his case, and because of the late appointment of trial counsel, this conflict was never resolved with the result that there was a fundamental lack of communication between relator and counsel during trial. Such a lack of communication could only further dilute the limited representation which could be given by late-appointed counsel. When relator discussed his case with a member of the Defender's Office (not his trial counsel), there was apparently an argument as to whether or not relator should plead guilty. Following this but before trial, relator applied to this Court for a writ of habeas corpus, complaining that the Defender's Office was not adequately representing him, that they were attempting to have him plead guilty contrary to his wishes, and that they had failed to apply for bail so that he might be released to seek witnesses for his defense and to seek his own attorney. We denied this writ for failure to exhaust state remedies, and relator sought to appeal to the Supreme Court of the United States. On the day of trial relator first met his trial counsel when counsel called his name in the back of the courtroom just prior to trial. Relator then sought to renew his protestations to this counsel, and an argument ensued. The record of this case commences with this argu-

according to office procedure that it was probably not until the night before trial. (N.T. Habeas Corpus, 33) He stated that he probably did not see relator until just before trial. Relator testified that he first met his trial counsel at the back of the courtroom where counsel called his name just prior to trial, and that an argument immediately broke out between them as to whether or not they should proceed to trial. (N.T. Habeas Corpus, 83)

2. It is not clear from the decided cases precisely what affirmative evidence must be adduced by the prosecuting authorities to satisfy their burden. In *Chambers,* the relator contended in the habeas corpus proceeding that had counsel had more time, he might have filed motions to suppress certain evidence. The Court held that the burden of lack of prejudice was satisfied because the search which yielded the evidence was constitutionally valid, because the State court in any event actually considered the question and held that it was admissible, and because any other infirmities were merely "harmless error" under the standards enunciated by the Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). It

was intimated that a contrary result might be reached where "belated appointment of counsel may have resulted in the failure to call witnesses whose availability defendant did not have a chance to disclose to his counsel, or where there was insufficient time to call them, or in the failure to raise defenses of which counsel was unaware or which he was unprepared to pursue, or in an improvident plea of guilty." It is apparently the rule of the Fourth Circuit, whose precedents were adopted by the Third Circuit in *Chambers,* that "It is for the District Judge—sitting as the trier of fact—to determine whether the danger of prejudice is so great as to warrant a new trial." Martin v. Commonwealth of Virginia, 365 F.2d 549 (1966). It is further stated that the writ may be granted upon finding of a "number of non-frivolous questions that merited thoughtful consideration by counsel," but that it is not essential that in fact the attorney would actually have advised petitioner differently. That Court concluded that "the lesson to be learned * * * is that the shorter the time for thoughtful preparation, the greater the risk that some valid defense, some unexplored feature of the case not instantly discernible will escape the lawyer."

ment continuing before the Court. We gather that relator, who had been incarcerated without bail for 199 days at this point, desired a continuance to further prepare for trial and to retain his own counsel, while appointed counsel was disposed to proceed without any further consultation with relator. Relator testified before us that he desired to call several witnesses, but that counsel refused to do so. The one witness who was supposed to be present to testify on relator's behalf did not answer when called, and never did testify in relator's defense. Relator did not communicate further with counsel during trial, and he was not called to the stand. In the hearing before us, in response to the Court's question to relator's trial counsel whether he was in a position to properly defend relator, counsel candidly replied that:

> "Just taking the entire question of whether or not I felt that I wanted to try that case at that time in terms of my preparation, in terms of the degree of cooperation I was getting from the defendant, I would say no, sir." (N.T. Habeas Corpus, 52)

Under these circumstances, we think that this atmosphere of hostility between the relator and his counsel was hardly conducive to "the kind of free communication between them which is essential." *Mathis, supra,* 394 F.2d at 752, quoted from Martin v. Commonwealth of Virginia, 365 F.2d 549 at 553 (4th Cir. 1966). One of the fundamental purposes of the guarantee of assistance of counsel to the accused is that the accused will have the opportunity to fully relate and discuss his version of the events with which he is charged with his trial counsel so that counsel may present the cause of the accused in its most favorable light to the trier of fact. Following this, "courts are required to allow counsel sufficient time to inform themselves fully, to reflect maturely and to prepare thoroughly in the cases to which they are assigned, and courts can no longer tolerate perfunctory performance by appointed lawyers of the duty owed to indigent defendants." *Mathis, supra,* at 752,

quoted from Fields v. Peyton, 375 F.2d 624, 628 (4th Cir. 1967). Under the circumstances of this case, it is hard to see how relator had any opportunity to discuss and develop any defense or facts in mitigation of the offense with which he was charged.

■ At trial, the Commonwealth's primary witness against relator was the bartender who was tending shop when the robbery for which relator was charged took place. The bartender first identified the two robbers to the police as "two unknown colored men", and he testified at trial that he was alone in the bar when it was robbed. Yet it developed at trial and in the hearing before us that the bartender had known relator as "Sugar" prior to the robbery because relator and his alleged accomplice had entered the bar six or eight times previously. Relator had expressed to the Voluntary Defender (not trial counsel) a desire to bring in witnesses to show this prior relationship. And in the hearing before us the bartender testified that he had not been alone during the holdup, but that in fact there were a man and woman present in the bar. We cannot determine whether a fuller investigation of these factors would have yielded a different result, or even different trial tactics, but under the circumstances relator was entitled at least to have the investigation made and to discuss his defense with counsel. As the Court stated in Martin v. Commonwealth of Virginia, 365 F.2d 549, 553 (4th Cir. 1966):

> "Whether any attorney would actually have advised petitioner differently because of these factors, or others not disclosed in the record, is not the question. The question is not one that can now be answered with any degree of certainty, nor need it be answered. The point is that because of the haste that marked the entire process this lawyer was simply in no position to evaluate his case and make considered judgments on these matters."

■ Finally, there were several infirmities at trial, which we think that counsel might have objected to had he

been appointed earlier and had more time to reflect upon the case. At one point, the following interchange between the District Attorney and the bartender occurred:

"Q. Mr. Price, when did you first identify this defendant, Mr. Bradford, as one of your assailants?

"A. Well, I was taken down to 8th and Race for the mug shots that they have.

"Q. You mean the photographs?

"A. Yes."

(N.T. Trial, 34)

The same suggestion was echoed at a later point when the investigating Detective said that relator had been identified from "photos" shown him at North Central Detective Division. Such reference to "mug shots" has been held by both Federal and State courts to be so prejudicial that a new trial is required. See United States v. Reed, 376 F.2d 226 (7th Cir. 1967); Commonwealth v. Allen, 212 Pa.Super. 314, 242 A.2d 901 (1968). Moreover, relator was subjected to a one-man line-up at 2:30 A.M. before a witness who had been told that the police had a man who fit the description he had given. This might have been objected to as a violation of due process, because there was no exigency necessitating a one-on-one confrontation at such an odd hour. See Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). However, no objections were entered on these counts, perhaps because the Defender's file at the time of trial did not include the notes of testimony from the preliminary hearing despite two remainders in that file suggesting that these notes be gotten before trial. (N.T. Habeas Corpus, 65–6) Had the trial attorney had more time to review these notes, he would have been in a much better position to determine, as a matter of trial strategy, whether to object to them or not.

In conclusion, after a review of the entire record in this case, we conclude that the Commonwealth has not satisfied its burden of proving that relator was not prejudiced by the late appointment of counsel. The writ of habeas corpus will therefore be granted unless the Commonwealth grants relator a new trial within thirty days.

The Court wishes to express sincere appreciation to James F. Bell, III, Esq. for his excellent legal services in every respect and in the highest traditions of the American Bar. It is also to be noted that this was done without compensation or reimbursement for expenses incurred.