Commonwealth, Appellant, v. Robinson.

Argued December 13, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Melvin Dildine*, Assistant District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *James D. Crawford*, Deputy District Attorney, *Rich-*

*ard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Joseph Michael Smith,* with him *F. Emmett Fitzpatrick, Jr.,* and *Fitzpatrick & Smith,* for appellee.

OPINION BY CERCONE, J., March 24, 1972:

The defendant Alonzo Robinson was found guilty by jury of aggravated robbery, assault with intent to murder, wantonly pointing a firearm, carrying concealed deadly weapons, and a violation of the Uniform Firearms Act. He then filed motions in arrest of judgment and for a new trial. The court below found no merit in the motion in arrest of judgment[1] but reluctantly granted defendant a new trial, despite what it described as "overwhelming evidence against defendant",[2] because it interpreted our decision in *Commonwealth v. Bruno,* 215 Pa. Superior Ct. 407, 258 A. 2d 666 (1969), to mandate such action because of two references to photographs of the defendant.

The first reference appeared in the Assistant District Attorney's opening remarks to the jury. In describing the events leading to defendant's arrest, he stated, "Now Officer Burns recognizes the defendant. He's been carrying his picture around with him and knows that he is wanted in connection with this taproom robbery." The second reference was made by Officer Watts during the course of his cross-examination: "Q. Officer Watts, you said that the interview took place inside your home. At approximately what time? A. Approximately 11 o'clock I would imagine. Q. Are you sure it didn't take place inside the 35th District at 11 o'clock? A. That is correct. I was at the

---

[1] And we agree.

[2] With which description we agree.

District during the interview and at home when he brought photos. He brought the photos for me to look at, and I identified the defendant from the photos." It is defendant's contention that these two references to photographs were prejudicial because they allowed the jury to infer prior police contact and deprived him of a fair trial.

There are two matters for us to resolve in any case in which prejudice is claimed from trial references to photographs or the introduction of photographs: first, was error committed; and if so, did that error require reversal of the conviction.

In determining whether or not error was committed, the following factors must be considered: (1) was the evidence relevant to any issue in the case? (2) was it introduced in a proper manner without undue emphasis and without clear suggestion to the jury of the likelihood of prior police contact, for example without making known to the jury that the photos were "mug shots"? and (3) was the jury properly instructed under the facts of the case as to the purpose of such evidence and the inferences that could not be drawn therefrom, keeping in mind that in a given case, the proper exercise of discretion may not require the trial judge to instruct on photographs, at all, since drawing the jury's attention to them may raise prejudicial inferences in the minds of the jury?

If the evidence is relevant and is introduced without undue emphasis or clear suggestion of prior police contact and is accompanied by proper and adequate instructions to the jury, no error has been committed. The introduction of the photographs, or testimony or references relating to them, would not be under such circumstances violative of the rule which holds that proof showing or tending to show that the accused is guilty of the commission of other crimes and offenses

at other times is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. That rule is not violated because in those circumstances no disclosure is made to the jury of defendant's criminal past record or of such facts from which it is "likely that the jury may conclude that such a record exists", which was the test used in *Commonwealth v. Allen,* 212 Pa. Superior Ct. 314, 242 A. 2d 901 (1968), where the term "mug shots" was used. In *Commonwealth v. Trowery,* 211 Pa. Superior Ct. 171, 235 A. 2d 171 (1967), this court clearly pointed out that photographs (or testimony having reference to them) are not per se excludable, but are only excludable where "the jury may recognize them as such [that is, as coming from police files] and be prejudiced against the defendant by the knowledge that he has had previous contact with the police." This court there stated "Where there are, however, no markings on the photograph to indicate their source, as in *Luccitti,* the rationale underlying exclusion disappears." In *Commonwealth v. Luccitti,* 295 Pa. 190 (1928), so referred to in *Commonwealth v. Trowery,* supra, the court held it was not error to introduce the pictures there involved because "there is nothing to indicate that the pictures came from the Rogues gallery, and the lower court states in its opinion that there were absolutely no markings on the pictures of any kind which would show their use."

Therefore, the mere introduction of photographs or testimony relating to them does not per se constitute error. However, where such photographs or references to photographs are not relevant to any issue in the case, or even if relevant, are improperly emphasized and clearly suggestive of police file source making it likely that the jury may conclude defendant did have prior police contact, then in such cases error has in

fact been committed and the question remains: what is the effect of such error? Does such error call for an automatic reversal or do we apply the harmless error rule of *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

In making this determination of whether the automatic reversal or the harmless error rule should apply, our Supreme Court reasoned in *Commonwealth v. Padgett*, 428 Pa. 229, 233, 235, 237 A. 2d 209 (1968) that in making the distinction between those "rights basic to a fair trial and those which can be tested by the rubric of harmless error" the governing criteria is "the degree of impact that the right involved has upon the fact-finding process."

We cannot equate the improper introduction of a photograph or a reference thereto with those violations, such as lack of counsel, coerced confession, or a prejudicial judge,[3] that obviously destroy the trial's fact-finding reliability so that an automatic reversal is required. If, in a particular case, the record raises no reasonable doubt that the improper introduction of a photograph or a reference thereto did not influence the jury's verdict of guilty, the defendant is not entitled to a new trial.

If, however, the record raises a reasonable doubt that the jury's verdict was not influenced by the improper evidence, the error cannot be deemed harmless and a new trial is required. Therefore, whether a new trial is or is not to be granted is dependent upon the record in each particular case.

In *Commonwealth v. Burdell*, 380 Pa. 43 (1955); *Commonwealth v. Duca*, 312 Pa. 101 (1933); *Commonwealth v. Trowery*, supra; *Commonwealth v. Allen*, supra; *Commonwealth v. Jamison*, 215 Pa. Superior Ct.

---

[3] Violations indicated in *Chapman v. California*, supra, as calling for automatic reversal.

379, 258 A. 2d 529 (1969) ; *Commonwealth v. Bonnano*, 216 Pa. Superior Ct. 201, 263 A. 2d 913 (1970)[4] and *Commonwealth v. Bruno*[5], supra, this court held the error not to be harmless.

However, in *Commonwealth v. Taylor*, 219 Pa. Superior Ct. 346 (1971), where the defendant argued for an automatic right to a new trial because of a reference to "mug shots", we held the error to be harmless under the facts of record. In that case defendant had taken the stand and his prior criminal record was properly introduced to impeach his credibility. We there stated ". . . whatever inferences may have been drawn by the jury from the inadvertent references to 'mug shots' became unimportant because his previous criminal record was properly made part of the record of the trial."

Applying the above holdings to the record now before us, it is our determination that no error was committed in the references to defendant's photograph. The reference to the photograph was relevant, for as stated by the lower court in its opinion: "In the present case, the Assistant District Attorney may well have considered it important to refer to the photograph. The officer who arrested defendant had not been a witness to the robberies two months before; and the jury could be expected to wonder why the officer, when he arrested defendant for a traffic violation, suspected defendant of the robberies. Not to explain that the officer had a photograph of defendant might have left the officer's testimony unfairly vulnerable." Defendant had testified that the police constantly harassed him, often

---

[4] All cases in which the source of the photographs was clearly demonstrated to the jury to be the police files.

[5] Where the witness not only made reference to her out-of-court identification of the defendant from a large number of photographs shown her by the police, but the photos were unduly further emphasized by the testimony of her father and the police officer.

arrested him with no cause, and only approached him that night because they had designs to kill him. The arresting officer's reference to the photograph thus served to reveal to the jury why and how defendant was identified and arrested as the robber at the time he was stopped for a traffic violation, providing an important link in the chain of the Commonwealth's evidence and countering defendant's charges of harassment and arrest without cause by police.

Officer Watts' reference to the photographs during his cross-examination was made necessary by defense counsel's attempt to reveal a contradiction in his testimony regarding the place of his interview by the detective. Officer Watts was thus required to explain that the interview took place at the District "and at home when he [the detective] brought back photos" for him to look at and from which he identified defendant.

The references to the photograph were made without indication that defendant's photo was a mug shot whose source was the police files; there was no such undue emphasis of the photograph calculated to raise the suggestion of such source in the minds of the jurors. Therefore, as stated in *Commonwealth v. Trowery,* supra, "the rationale underlying exclusion disappears," and we find no error to have been committed. Furthermore, were we to hold that the references to the photographs constituted error, we would determine it to be harmless error for the overwhelming evidence of defendant's guilt appearing of record raises no reasonable doubt that the jury's verdict was not influenced by the references to defendant's photograph.

Order reversed, and case remanded for judgments of sentence.

MONTGOMERY and SPAULDING, JJ., concur in the result.