Commonwealth *v.* Thomas, Appellant.

Argued March 26, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Andrew G. Gay,* for appellant.

*William P. Boland,* with him *Mark Sendrow* and *Steven Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., June 21, 1974:

The appellant herein, after a jury trial, was found guilty of aggravated assault and battery and assault with intent to kill. In the instant appeal he urges this court to reverse the lower court's denial of his motion for a mistrial after a Commonwealth witness, in an unresponsive answer to a question put by the court, referred to "mugshots" the police showed to him prior to the trial. The facts of the case are as follows.

On Easter Sunday evening in 1972, despite the holiday atmosphere, a heated argument culminating in a fistfight broke out between two teenagers on a Philadelphia street corner. The mother of one of the boys witnessed the scuffle and, in an apparent effort to stop the fight, threw what one witness identified as lye at her son's opponent. At the time the woman was accompanied by the defendant, Wesley Thomas, who was sitting in his car. At this point Thomas alighted from his car and shouted, "We don't have to go through all this stuff." Thomas then took a pistol from his car and began firing at both the fighters and the spectators. Two of the five or six shots that Thomas fired struck two youthful onlookers. One of the boys was shot in the leg, and the other was more seriously wounded in the back.

At trial, the two boys who were shot positively and unshakeably identified Thomas as the man who fired the shots that evening. In addition, the Commonwealth introduced the testimony of a third witness who had not been in the line of fire. That man not only was

able to identify Thomas as the culprit, but also had had the presence of mind to note the license number, color and model of Thomas' car, which he had provided to the police when they arrived at the scene. This witness' testimony, however, was marred by the following exchange which occurred during cross-examination, and after the *defense* induced the witness to disclose the fact that the police had shown him photographs.[1]

"Q. And, he didn't show you more than three photographs that day, did he?  A. He just showed me three. Q. He didn't show you seven?  A. He showed me three. Q. You're positive of that?  A. Three, six, nine. THE COURT: What was that?  THE WITNESS: Three, six, nine. Three of one man, three of another man and three of another man, actually nine pictures, but it was only three men. THE COURT: There were what?  THE WITNESS: There were three men but there were nine pictures. THE COURT: What do you mean?  THE WITNESS: In a row. *Call them mug shots in a row* and they were side view, front view, side view—side view, front view and the other side view, but they were separated in threes. THE COURT: What was the third shot? THE WITNESS: It was three prints. THE COURT: The front view and a side view?  THE WITNESS: And the other side view. THE COURT: So that the three photographs were for each of the three men. THE WITNESS: Right. THE COURT: Now I understand."

---

[1] This fact came as no surprise to defendant's counsel. Indeed, the district attorney informed the court and opposing counsel at the outset that he had instructed the witnesses not to mention the photographs in their testimony unless they were clearly asked about them by the defense. The Commonwealth's case was strong enough that there was no need to introduce these prior out-of-court pictorial identifications. Therefore, the Commonwealth gingerly avoided questions which could result in answers alluding to the photographs.

At this point the defendant's counsel moved for a mistrial; but, after a discussion with counsel in chambers, the court denied the motion.

The defendant argues that *Commonwealth v. Allen,* 448 Pa. 177 (1972) and its progeny[2] require that the judgment of sentence be reversed and the defendant granted a new trial. The critical question in this appeal, as we view it, is whether *any* reference to "mugshots" in a jury trial will compel the granting of a timely motion for a mistrial; i.e., whether the harmless error rule may be applied to such errors.[3]

In *Allen,* supra, the Supreme Court held that references to police photographs would constitute reversible error if the jury could reasonably infer from that testimony that the defendant had a prior criminal record. In that case, the Commonwealth also argued that if any error were committed by reference to police photos, it was harmless beyond a reasonable doubt because the defendant testified and referred to his prior criminal record. Without discussing the general applicability of the harmless error rule to references to police photos, the court rejected the Commonwealth's argument be-

---

[2] See, e.g., *Commonwealth v. Bobko,* 453 Pa. 475 (1973); *Commonwealth v. Clark,* 453 Pa. 449 (1973).

[3] Of course, *Allen* and its progeny dealt only with situations where a Commonwealth witness gave the taboo testimony in answering a question put by the prosecutor, and might therefore be distinguishable. We note in passing, however, that the damage done to the defendant's "presumption" of innocence is no different no matter how the mugshot testimony gets before the jury. Except when the defense itself induces the statement, the matter of responsibility for its utterance would seem irrelevant to the question of whether an appealable error, harmless or prejudicial, was committed when the reference was made. There is some support, however, for the proposition that a *deliberately* induced reference by the Commonwealth should require the application of an automatic reversal rule. See L. Hall et al., Modern Criminal Procedure 634 (1969).

cause the defendant may have been compelled to take the stand and so testify due to the references to the photographs and the adverse inference the jury might draw therefrom. The court therefore did not reach the question of whether such a reference may constitute harmless error. Since *Allen,* there has been a lingering doubt as to whether the harmless error rule may be applied to such cases.[4]

In *Chapman v. California,* 386 U.S. 18 (1967) the Supreme Court rejected the argument that the harmless error rule was inapplicable to all trial errors of constitutional dimensions. In so doing the court observed: "[Harmless error] rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Id.* at 22. The court then established the standard for measuring whether a constitutional error was harmless: "[T]he court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt."[5]

In *Commonwealth v. Robinson,* 221 Pa. Superior Ct. 167 (1972), a pre-*Allen* decision, this court applied the harmless error rule, as announced in *Chapman,* to the introduction of police photographs or references thereto by witnesses. In doing so we pertinently stated: "We cannot equate the improper introduction of a pho-

---

[4] This question of whether a particular error is harmless is, of course, entirely distinct from the question of whether an error was committed at all. See *United States v. Hines,* 470 F.2d 225 (3d Cir. 1972).

[5] More recent decisions have indicated that the court may be retreating from this most strict test. For example, the court in *Schneble v. Florida,* 405 U.S. 427 (1972) measured the *Bruton* error by the following standard: "In this case, we conclude that 'the minds of an average jury' would not have found the state's case significantly less persuasive had the testimony as to [the co-defendant's] admissions been excluded."

tograph or a reference thereto with those violations, such as lack of counsel, coerced confessions, or a [prejudiced] judge, that obviously destroy the trial's fact-finding reliability so that an automatic reversal is required. If, in a particular case, the record raises no reasonable doubt that the improper introduction of a photograph or a reference thereto did not influence the jury's verdict of guilt, the defendant is not entitled to a new trial."[6]

Were it not for the strong language employed by the Supreme Court in *Commonwealth v. Allen,* supra, and *Commonwealth v. Bobko,* supra, we would have no difficulty in applying the holding in *Robinson* to the facts of this case, and affirm the judgment of sentence of the court below. However, since the *Robinson* case, the strong language in *Allen* has led to an affirmance per curiam, by an equally divided court, in *Commonwealth v. Turner,* 223 Pa. Superior Ct. 252 (1972). The dissenting opinion therein interpreted *Allen* as setting forth a rule of automatic reversal when a witness refers to police photographs in such a fashion that the jury could reasonably infer that the defendant had a prior criminal record.[7] The Supreme Court granted *allocatur* and reversed, but did not follow the rationale of the

---

[6] See also *Commonwealth v. Taylor,* 219 Pa. Superior Ct. 346 (1971).

Errors of constitutional proportions which do not require automatic reversal include: confessions given without *Miranda* warnings, *Milton v. Wainwright,* 407 U.S. 371 (1972) ; denial of right to confront and cross-examine witnesses, *Brown v. United States,* 411 U.S. 223 (1973) ; wrongfully seized evidence, *Commonwealth v. Pearson,* 427 Pa. 45 (1967) ; denial of counsel at a preliminary hearing, *Coleman v. Alabama,* 399 U.S. 1 (1970) ; and, denial of right to counsel at a line-up, *United States v. Wade,* 388 U.S. 218 (1967).

[7] See also *Commonwealth v. Harding,* 225 Pa. Superior Ct. 84 (1973) where, although finding the *Allen* error not to be harmless, Judge SPAETH stated that some doubt existed as to the vitality of *Robinson* after the Supreme Court's decision in *Allen.*

dissenters of this court. Instead, the court again found that the error was not harmless because the defendant's testimony, the basis for the Commonwealth's harmless error argument, may have been compelled by the allusion to his prior criminal record in the Commonwealth's case in chief: *Commonwealth v. Turner,* 454 Pa. 439, 311 A.2d 899 (1973).

In *Commonwealth v. Cannon,* 453 Pa. 389 (1973), the Supreme Court was confronted with a situation where the defendant himself disclosed his prior criminal record, once again, in an unresponsive answer to a Commonwealth question. In testimony more prejudicial than an allusion to police photographs or mugshots, the defendant stated that he had in fact been incarcerated in a penal institution in Pennsylvania. In affirming the lower court's denial of the defendant's motion for a mistrial, the Supreme Court held that, "even if we assume that it was error to refuse to grant a mistrial on the basis of these disclosures, *it was harmless beyond a reasonable doubt." Id.* at 394. If testimony which, in no uncertain terms, indicates that the defendant has been incarcerated for criminal misbehavior may be harmless error, it cannot be gainsaid that the reference to mugshots may also be harmless error. Several federal circuit courts have also reached similar conclusions.[8] Therefore, in light of the *Cannon* case, and the persuasive federal decisions, we find that *Robinson* remains undisturbed by the Pennsylvania Supreme Court decisions which have succeeded it.

Applying the harmless error rule of *Chapman* to the facts of this case, we find that the Commonwealth's evidence was sufficiently compelling that we are able to

---

[8] See, e.g., *Bates v. Nelson,* 485 F.2d 90 (9th Cir. 1973) ; *United States v. McCarthy,* 470 F. 2d 222 (6th Cir. 1972), and the cases cited therein.

declare a belief that the alleged error, if indeed it was error, was harmless beyond a reasonable doubt.[9]

Judgment of sentence is affirmed.

[9] In fact the appellant had been found guilty prior to his instant conviction by a judge, sitting without a jury. He was granted a new trial by the lower court because the jury waiver colloquy was inadequate.