## Commonwealth *v.* Curry, Appellant.

Argued November 25, 1929.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*W. W. Van Baman,* with him *Harvey A. Gross,* for appellant.—Where a confession has been obtained from the accused by improper inducement, any statement made by him while under that influence is inadmissible: Com. v. Harmon, 4 Pa. 269; Com. v. Sheets, 197 Pa. 76.

The burden of proof is upon the Commonwealth to show that the subsequent confession was not made under the improper inducement which rendered the first confession involuntary: Com. v. Harmon, 4 Pa. 269.

The Supreme Court in Com. v. Green, 126 Pa. 536, held that a member of a grand jury was a competent witness to show and prove that a particular presentment had been wrongfully reached by the grand jury upon which the witness had served.

*Amos W. Herrmann,* for appellee.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 6, 1930:

John Curry, appellant, was convicted of murder of the first degree, with punishment fixed at life imprisonment. Other participants in the homicide were John Blymire (or Blymyer) and Wilbert Hess. All were tried separately.

On November 26, 1928, Blymire and Curry, having bought about twenty-five feet of clothesline, which they cut into convenient lengths for tying their proposed victim, met Hess by appointment and went to the home of Nelson Rehmeyer. Their alleged object in visiting Rehmeyer is thus stated in appellant's history of the case: "Blymire knew that Rehmeyer had......a treatise on

witchcraft, powwow, and other occult practices. In order to help [the Hess family] lift the 'spell' which the Hesses imagined encompassed them, Blymire sought to obtain this book, and a lock of Rehmeyer's hair." Defendant and Blymire spent the night at Rehmeyer's house, and left in the morning without having harmed him or made any attempt to get the book or hair. They returned that evening with the rope, which they also had with them on the visit the night before, and with Hess to help them. The weather was cold, and Rehmeyer, after admitting the three men to his kitchen, turned his back to start a fire; when, to again quote from appellant's history of the case, "Blymire and Hess [immediately] leaped upon him. A struggle ensued. Curry joined in the fight. ...... Blymire felled Rehmeyer with a chair. Curry kicked Rehmeyer. Rehmeyer was finally beaten into unconsciousness,...... tied with the ropes [and a halter of rope was drawn tightly around his neck]. The three men then searched for the book, [but] didn't find it. They found about three dollars in money, [which] they [took and] subsequently divided. This money was found on the second floor of the house. When they returned to the kitchen they poured water about to obliterate fingerprints. Blymire and Curry wore gloves from the time they entered the house until they left. They also poured oil from an oil lamp upon Rehmeyer's body and ignited it. Then they left." Two days later Rehmeyer's mutilated and burned body, with a fractured skull and many other serious wounds, was discovered beside a hole burned in the floor. It should be added that the evidence warrants the finding of the following additional facts: During the struggle, Rehmeyer, believing his assailants wanted his pocketbook, surrendered it to Curry, who handed it to Blymire. Curry and Blymire wore gloves to prevent fingerprints. The igniting of Rehmeyer's body was for the purpose of burning down the house and thus destroying all evidence of the crime. Finally, and significantly,

though the alleged purpose of the visit was to get some of Rehmeyer's hair and the book on witchcraft, appellee concedes in his brief, "no effort was made to obtain the lock of hair and no particular search was made for the book"; however, defendant and his confederates did take their victim's money. In short, the evidence would sustain a verdict of wilful, deliberate and premeditated killing, and would fully warrant a finding that Rehmeyer was brutally murdered during the course of a robbery and in the perpetration of arson.

On such a record, it is difficult to understand how appellant can hope for a reversal. His prime position is in substance briefly this: Though my own testimony at the trial may, under the law, have warranted the verdict returned by the jury, yet certain evidence was erroneously admitted during the presentation of the Commonwealth's case which entitles me to a new trial, so that another jury may have a chance to pass on my case and acquit me or give me the opportunity for less punishment, if it sees fit.

In thus stating appellant's position, we do not overlook his statement of another question as also involved: "Do the ingredients necessary to constitute first degree murder exist in this case?" In disposing of this proposition, it is necessary to say only that, despite anything which Curry or others may have alleged as to the purpose of their visit to Rehmeyer's home, the acts of defendant and his confederates, both before and at the time of the homicide, furnish sufficient evidence in themselves to show, from more than one aspect, "the ingredients necessary to constitute first degree murder."

To sustain what we have called appellant's prime position, he contends that, following his arrest, the prosecuting officer obtained from him a written confession by means which he asserts are forbidden by law, in that "The district attorney said, 'I'll tell you what I'll do—if you help me, I'll help you,' and, so induced, Curry made a confession which the district attorney wrote down."

The Commonwealth's case contains testimony of other, subsequent, confessions by defendant, or what appear as voluntary statements of incriminating facts in the nature of confessions, and the admission of this testimony is assigned for error. Appellant contends that, under the law, "where a confession offered is objected to on the ground that it was induced by the same influence which induced a prior improperly obtained confession,......the court, before the evidence is received, [should] allow defendant to prove the circumstances under which the prior confession was obtained and its connection with the second confession. The court should then decide whether such circumstances show that the prior influence continued and induced the second statement, and admit or reject the latter accordingly." A sufficient answer to this contention is that, so far as the record before us shows, defendant made no proper effort to have the practice now insisted upon pursued at the trial, and the testimony, the receipt of which is now criticized, was admitted without objection, exception or subsequent motion to strike out. As a matter of fact, the so-called written confession, while incidentally mentioned by some of the Commonwealth's witnesses, was not admitted in evidence and never went to the jury. At the end of the Commonwealth's case, a paper of that character was offered, as "Exhibit No. 8," but it was not then admitted and the offer was later withdrawn. The writing thus incidentally figured in the trial, but it does not appear in the record, and we have no way of telling what it amounts to as a confession. It is quite plain, however, that the conviction of defendant was in no substantial sense due to the several references, during the course of the trial, to this so-called written confession, whatever that document may have contained; for Curry, as a witness for himself, subsequently testified to substantially all the material incriminating facts to which we have adverted, or which in any way appear in the evidence of the Commonwealth

True, appellant contends that, had the court, at the end of the Commonwealth's case in chief, ruled on the question of admitting or refusing the written confession, instead of postponing that matter till the end of defendant's case (after he had testified), the trial might have taken a turn more to defendant's advantage. The answer is that the trial judge was well within his rights in regulating the course of the trial in this regard, and no objection or exception appears on the record to his express ruling that the question of the admissibility of Exhibit 8 (the so-called written confession) would be disposed of "at the close of defendant's testimony." In short, when the Commonwealth closed its testimony, defendant did not insist upon a ruling as to admitting or rejecting Exhibit 8, nor did he take the position that the prosecution had failed to make out a case for the jury; on the contrary, he took the stand in his own defense, and in effect confessed his guilt, leaving it to the jury to draw the inference as to the degree of that guilt. He is not now in a position to complain successfully of the result, for the charge of the trial judge gave the jury every opportunity to draw inferences favorable to appellant from defendant's and other testimony in the case, and to find him guilty of a less degree of crime or to acquit; but it very properly convicted him of murder of the first degree.

The only other matter which calls for special consideration is the refusal of the court below to consider affidavits of certain jurors who tried defendant, offered in support of his motion for a new trial. These affidavits were tendered to show that the jurors, in their deliberations, had discussed and considered other facts than those given in evidence, and that "the jury wanted to know the punishment for murder in the second degree, but could not obtain this information." As to the first premise, the general rule is the one followed by the court below, that "jurors may not invalidate a verdict by their own testimony" (MOSCHZISKER's Trial by Jury,

sections 424, 425, 426, and cases there cited), and, if there may be exceptions to this rule, a case like the present, where the defendant's own testimony supports the verdict found, does not fall within that class. As to the second premise, so far as the record shows, the jurors made no effort to ascertain the punishment for murder of the second degree, and, in any case, that was not a matter for them.

We have considered all the assignments of error and discussed the material ones. None of them presents reversible error. The defendant, who, on his own demand, was tried separate from his confederates, had a fair trial, at which he was treated with consideration. The verdict is fully sustained by the evidence in the case.

The judgment is affirmed, and it is ordered that the record be remitted to the court below to the end that the sentence imposed may be carried out.