Commonwealth *v.* Patrick, Appellant.

438

Argued November 20, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Irving W. Backman,* for appellant.

*Charles H. Rogovin,* Assistant District Attorney, with him *Vincent C. Veldorale* and *Joseph M. Smith,* Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 19, 1965:

A jury found defendant guilty of murder in the first degree on each of two consolidated bills of indictment, and fixed the penalty on one bill at life imprisonment and on the other bill at death. Defendant appeals from the judgments of sentence of the Court of Oyer and Terminer of Philadelphia County which denied defendant's motion for a new trial and imposed sentence in accordance with the jury's verdict.

The evidence justified the jury in finding the following facts:

On March 26, 1960, the dead bodies of Gloria Louise Overton, a minor 10 years of age, and Lula Mae Overton, 30 year old mother of the minor, were found in their home in Philadelphia. The cause of death in each case was manual strangulation. In the early morning of the day after the bodies were found, the defendant, Patrick, was apprehended and taken to a police headquarters where he signed a typewritten statement in which he admitted killing both deceaseds. Numerous questions are raised by both parties to this appeal.

The first question involved is whether the trial Court committed reversible error in failing to poll the jury of its own motion. Counsel for the defense at the time the jury announced its verdicts on the question of guilt, did not request the Court that a poll of the jury be taken. In the absence of a demand by defendant or by the District Attorney for the polling of the jury, there is no duty or burden on the trial Court to order or conduct a poll. *Commonwealth v. Martin,* 379 Pa. 587, 109 A. 2d 325; *Commonwealth v. Cano,* 182 Pa. Superior Ct. 524, 128 A. 2d 358, affirmed on other grounds by the Supreme Court, 389 Pa. 639, 133 A. 2d 800; 53 Am. Jur., "Trial", §1017, p. 704; Anno., 49 A.L.R. 2d 619, §6, "Accused's right to poll of jury."

Although the question of the duty of a trial Court to poll the jury of its own motion has never been specifically decided ipsissimis verbis, our books are replete with cases in which the Court *assumed* that the right to poll the jury is dependent upon a request by defendant or by the Commonwealth. For example, in *Commonwealth v. Martin,* 379 Pa. 587, 109 A. 2d 325, a defendant convicted of first degree murder and sentenced to death appealed the judgment of sentence. Defendant contended, inter alia, that he was entitled to have the jury polled before its verdict was recorded. The Court said (pages 592-593) : "The right of a defendant to poll the jury which has returned a verdict of guilty against him has been widely recognized and accorded: 3 Wharton's Criminal Procedure (10th Ed.), §1683; 2 Bishop, New Criminal Procedure (2nd Ed.), §1003-3; Abbott, Criminal Trial Practice (4th Ed.), §735. The procedure had its genesis in ancient common law (see 2 Hale, Pleas of the Crown 299) and has long been both approved and uniform practice in this State: Walters v. Junkins, 16 S. & R. 414, 415; Commonwealth v. Twitchell, 1 Brewster 551 (O. & T. Phila. Co.) ; Commonwealth v. Krause, 8 Philadelphia 607 (Q.S.) ; Commonwealth v. Buccieri, 153 Pa. 535, 553, 26 A. 228; Commonwealth v. Schmous, 162 Pa. 326, 336, 29 A. 644; Commonwealth v. Scovern, 292 Pa. 26, 36, 140 A. 611; cf. Commonwealth v. Johnson, 359 Pa. 287, 291, 59 A. 2d 128. See, also, 1 Sadler, Criminal Procedure in Pennsylvania (2nd Ed., Henry), §504, and Moschzisker, Trial by Jury, §347. Even the Commonwealth possesses the right to have the jury polled: Commonwealth v. Lemley, 158 Pa. Superior Ct. 125, 127, 44 A. 2d 317. . . .

"As stated in some of our cases, cit. supra, and by text writers, the procedure for polling a jury requires that the request be made before the verdict is recorded."

The second question is whether, after the verdict is recorded and the jury discharged, the verdict can be impeached by the affidavit of one juror* alleging coercion by the other jurors. About one week after the trial, juror No. 12, Frank E. Satell, informed counsel for the defendant that he had been coerced by his fellow jurors, and on November 20, 1963, 11 days after the trial, he executed and presented to the lower Court an affidavit to such effect. This affidavit was in effect an attempt to impeach the verdict of the jury unanimously recorded. Our Courts have repeatedly held for over 150 years that after a verdict is recorded, and after the jury has separated and been discharged, jurors may not invalidate or impeach a verdict by their own testimony. *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861; *Commonwealth ex rel. Darcy v. Claudy,* 367 Pa. 130, 79 A. 2d 785; *Commonwealth v. Johnson,* 359 Pa. 287, 59 A. 2d 128; *Commonwealth v. Curry,* 298 Pa. 363, 148 A. 508; *Commonwealth v. Newcomer,* 183 Pa. Superior Ct. 432, 132 A. 2d 731; *Commonwealth v. Cano,* 182 Pa. Superior Ct. 524, 128 A. 2d 358.

In *Commonwealth v. Kravitz,* 400 Pa., supra, the Court said (pp. 222-223) : "In Commonwealth ex rel. Darcy v. Claudy, 367 Pa. 130, 79 A. 2d 785, the Court said (pages 133-134) : 'The petition alleges that some of the jurors have recently been interviewed and have stated that, if relator had taken the witness stand in his own defense or if his counsel had produced evidence of good reputation prior to his association with his co-defendants, they would have fixed the penalty at life imprisonment instead of death. The practice of interviewing jurors after a verdict and obtaining from them ex parte, unsworn statements in answer to undisclosed questions and representations by the inter-

---

\* or a number of jurors.

viewers *is highly unethical and improper* and was long ago condemned by this Court in Cluggage v. Swan, 4 Binney 150, 158 (1811), reiterated and reaffirmed in Friedman v. Ralph Bros., Inc., 314 Pa. 247, 249, 171 A. 900, 901, and again quoted from at length in Redmond v. Pittsburgh Railways Company, 329 Pa. 302, 303-304, 198 A. 71, 72. *It is forbidden by public policy*: Commonwealth v. Greevy, 271 Pa. 95, 99, 114 A. 511, 512. Certainly such post-trial statements by jurors are not to be given any weight on even an application for a new trial, much less a petition for a writ of habeas corpus.' We find no error or abuse of discretion in the lower Court's rejection of this motion for a new trial."

In *Commonwealth v. Johnson,* 359 Pa. 287, 59 A. 2d 128, the defendant was indicted and tried for murder. A verdict of "not guilty" was returned. The following morning, several members of the jury indicated that instead of "not guilty" their intended verdict was not guilty of murder, but guilty of manslaughter. The lower Court permitted the jury to be polled after discharge and separation, at which time a verdict of guilty of voluntary manslaughter was entered. This Court reversed, holding that the trial Judge's act in reassembling the jury was a nullity and that *the verdict as recorded* was the verdict of the jury, which the jury may not impeach or alter or change after separation or discharge.

It is clear that there was no error in the trial Court's refusal to consider the juror's affidavit.

The third question involved is whether there was error in consolidating for trial the two murder bills of indictment and trying defendant on both indictments at one trial. In the instant case, although each bill of indictment related to a separate homicide, the two homicides were almost inseparably interrelated to one another.

When defendant sat down beside Lula Mae's body after having strangled her to death, her daughter woke up and said, "Where's Mommy." Defendant then grabbed her around the neck, choked her, picked her up, took her into the bathroom and put her in the bathtub, and filled it with water high enough to cover her face. However, the assistant medical examiner for the City of Philadelphia testified that she died not of drowning but of strangulation.

The constitutionality and legality of consolidating two separate but related bills of indictment for murder against one defendant has been sustained ever since *Ashe v. Valotta*, 270 U.S. 424. In that case, Mr. Justice HOLMES, speaking for the Court, said (pages 425-426) : "There is no question that the State Court had jurisdiction. But the much abused suggestion is made that it lost jurisdiction by trying the two indictments together. Manifestly this would not be true even if the trial was not warranted by law. But the Supreme Court of Pennsylvania has said that there was no mistake of law, and so far as the law of Pennsylvania was concerned it was most *improper* [for the federal Court in a habeas corpus] to attempt to go behind the decision of the Supreme Court, to construe statutes as opposed to it and to hear evidence that the practice of the State had been the other way. The question of constitutional power is the only one that could be raised, if even that were open upon this collateral attack, and as to that *we cannot doubt that Pennsylvania could authorize the whole story to be brought out before the jury at once, even though two indictments were involved, without denying due process of law*. If any question was made at the trial as to the loss of the right to challenge twenty jurors on each indictment, the only side of it that would be open here, would be again the question of constitutional power. That Pennsylvania could limit the challenges on each indictment to ten does not admit doubt."

Not only is the consolidation procedure adopted by the Court below constitutionally permissible but it is clearly authorized by Pennsylvania law. In *Commonwealth v. Valotta,* 279 Pa. 84, 123 A. 681, the Court stated (pages 88-90) : "The fifth attack made on the integrity of the verdict is that it was improper to try the defendant upon the two [murder] indictments at the same time. The record shows that he made no objection to be thus tried. Assuming, but not deciding, that notwithstanding his failure to object on trial, he can now be heard to raise this question, *the simultaneous trial on two indictments charging murder is warranted and the finding of guilt in the second degree on one indictment does not affect the first degree conviction on the other: . . ."*

Consolidation or separation of indictments is a matter for the trial judge, whose conclusion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant: *Commonwealth ex rel. Bolish v. Banmiller,* 396 Pa. 129, 132, 151 A. 2d 480; *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A. 2d 820; *Commonwealth ex rel. Spencer v. Ashe,* 364 Pa. 442, 445-446, 71 A. 2d 799; cert. den. 339 U.S. 990; *Commonwealth v. Grosso,* 192 Pa. Superior Ct. 513, 162 A. 2d 421; *Commonwealth v. Patrick,* 174 Pa. Superior Ct. 593, 101 A. 2d 139.

The record in the instant case discloses neither an abuse of discretion nor the injustice and prejudice to the defendant required for reversal.

The fourth question is whether it was reversible error for the trial Court to fail to charge the jury as to the effect and consequences of a jury disagreement. The only mention of this issue in the charge of the Court below was as follows: ". . . your verdict must be unanimous, all twelve must agree . . . ." (transcript,

---

* Italics throughout, ours.

page 326) This language is virtually identical with the Court's charge in *Commonwealth v. Ford,* 193 Pa. Superior Ct. 588, 596-597, 165 A. 2d 113, in which the Superior Court specifically and correctly ruled that the trial Judge is under no duty to specifically charge that jurors may disagree. The Court there said (pages 596-597) : "The sixth contention is that the trial judge erred in charging the jury, 'Your verdict must be unanimous—that is all twelve must agree.' Appellant contends this charge 'is erroneous because it precluded the possibility of a hung jury.' A trial judge need not charge jurors specifically that they may disagree."

While the jury has the right to disagree up to the time *their verdict was recorded,* the trial Judge is not bound to invite them to do so by specifically informing them of their right. *Commonwealth v. Newcomer,* 183 Pa. Superior Ct., supra, page 436. There is no merit in this contention of the defendant.

The fifth question is whether the *alleged confession* of the accused is rendered inadmissible (a) because the interrogating police officers failed initially to warn the accused that anything he said might be used against him and (b) because the accused did not have counsel present at the interrogation. The Commonwealth concedes that the defendant, at the time he gave the alleged confession, (1) was not warned that any statement by him might be used against him at his trial, and (2) that the defendant was not informed of his right to the presence of counsel and was not offered such assistance. The record does not disclose whether counsel was requested by the defendant or whether he desired such assistance, although the defendant's appellate counsel now alleges that both the defendant and his mother expressed their desire to retain counsel but were informed that it was not necessary.

Under Pennsylvania law, a person accused of murder need not be provided with counsel immediately up-

on his arrest or before he is questioned by the police, unless an attorney is requested. *Commonwealth ex rel. Maisenhelder v. Rundle,* 414 Pa. 11, 198 A. 2d 565; *Commonwealth ex rel. Linde v. Maroney,* 416 Pa. 331, 206 A. 2d 288. Cf. also *Commonwealth v. Coyle,* 415 Pa. 379, 203 A. 2d 782.

In *Commonwealth ex rel. Maisenhelder v. Rundle,* 414 Pa., supra, the Court said (pp. 13-14, 16): "The single question now presented for determination is: Was the appellant denied constitutional guarantees when he was given a preliminary hearing before the committing magistrate without the benefit of representation by counsel?

"It has long been the law in Pennsylvania that a defendant need not be provided with counsel at the time of his arrest or immediately thereafter: Commonwealth v. Agoston, 364 Pa. 464, 72 A. 2d 575 (1950); Com. ex rel. Carey v. Prison Keeper, 370 Pa. 604, 88 A. 2d 904 (1952), cert. denied, 345 U.S. 930, 73 S. Ct. 793 (1953). The act of the legislature of March 22, 1907, P. L. 31, as amended by the Act of April 28, 1961, P. L. 145, §1, 19 P.S. §784, providing for the appointment of counsel for an indigent defendant accused of murder requires the assignment of counsel to defend such person 'at the trial of the case.'

. . .

"It should be noted also, that several federal courts have recently decided that the constitutional provision requiring the assistance of counsel contains no express or implied command that an accused shall be furnished counsel at the time of the preliminary hearing, and that the failure to provide him with counsel at that time does not, in itself, constitute lack of due process. See, Bryant v. United States, 173 F. Supp. 574 (1959); State v. Sullivan, 10 Cir. (1955), 227 F. 2d 511; United States v. Levine, 127 F. Supp. 651 (1955); United States v. Blanton, 77 F. Supp. 812 (1948).

"Order affirmed."

In *Commonwealth ex rel. Linde v. Maroney,* 416 Pa., supra, the Court said: ". . . Before an arrest was made, the police were not only justified in their actions, but were required in fulfillment of their responsibilities to hear 'the other side' and to give the suspected individual the opportunity of explanation. To hold now that his description of the event at that time is inadmissible, because he did not have counsel or waive his right thereto beforehand, is tantamount to precluding the police from ever interrogating individuals suspected of crime, and could result in barring from evidence all admissions obtained in the course thereof. No decision has as yet stated this to be the law."

In the recent case of *Commonwealth v. Coyle,* 415 Pa., supra, which involved an appeal from a judgment and sentence of death in a first degree murder indictment, this Court considered facts strikingly similar to the case at bar and said, inter alia (page 399): ". . . Before and during [one of the police interrogations to which defendant was subjected], it is admitted that the appellant was not advised of his right to remain silent, did not have counsel, and was not offered such assistance. . . .

"During the course of [the above described interrogation], the record is convincing that the appellant did not ask for the assistance of counsel. We note that this, in itself, is not controlling since if such assistance were constitutionally required, the right thereto would not depend on a request: Carnley v. Cochran, 369 U.S. 506, 82 S. Ct. 884 (1962). However, this factor substantially distinguishes the present case from the situation presented in Escobedo v. State of Illinois, 84 S. Ct. 1758 (1964). Further, we do not interpret Escobedo to mean that counsel must immediately be afforded one taken into custody, under all circumstances, particularly where none is requested. The mere fact

that appellant was unrepresented by counsel during the questioning does not invalidate admissions made against interest. See, Commonwealth v. Graham, 408 Pa. 155, 182 A. 2d 727 (1962). . . ."

The Supreme Court of Illinois, in the recent case of *People v. Hartgraves,* 33 L.W. 2163, took the same position concerning the application of *Escobedo* as this Court did in *Coyle.*

In *Long v. United States,* 33 Law Week 2199 (D.C. Cir.) October 22, 1964, the Court said: "The only point made on this appeal is embodied in an invitation to us to adopt a rule that no statements or admissions to police officials out of the presence of counsel, irrespective of the circumstances in which they were made, are to be received in evidence at the trial. It does not appear to us that any legislative body in this country has prescribed such a rule of procedure in criminal trials, nor that any court has so held. Neither do we."

See also to the same effect, *People v. Stanley,* 33 L.W. 2272 (New York Court of Appeals).

In view of the above authorities and under the facts and circumstances of this case, we conclude that a statement or confession made during interrogation by the police, *if voluntarily made,* may be constitutionally admissible in evidence even though the accused was neither warned of his right to remain silent, nor of his right to counsel.

The last question involved is whether the alleged confession of the defendant was properly determined to be voluntary. *The Court* below did not make a preliminary determination of the voluntariness of the confession before admitting it in evidence, but in accordance with the then well settled law* submitted the issue of voluntariness to the same jury which decided the defendant's guilt. This procedure clearly contravenes the law as recently pronounced in *Jackson v.*

*Denno,*\* 378 U.S. 368; *Commonwealth ex rel. Gaito v. Maroney,* 416 Pa. 199, 204 A. 2d 758; *Commonwealth ex rel. Linde v. Maroney,* 416 Pa., supra.

In *Commonwealth ex rel. Gaito v. Maroney,* supra, we pertinently said: ". . . If, on appeal from the conviction or in habeas corpus, the record discloses that *prior* to *Jackson v. Denno* (a) a defendant had been found guilty in a trial in which the voluntariness of the confession was controverted or was in issue under the evidence, and (b) the confession was admitted without a prior hearing and ruling thereon by the Court as to its voluntariness, the case must be *remanded to the trial Court for a hearing on the question of voluntariness of the confession.* If the Court of original jurisdiction or the appellate Court, in the event of an appeal, decides that the confession was voluntary, the judgment and sentence shall be sustained."

Governed by these recent decisions, we make the following Order:

The record is remanded to the Court of Oyer and Terminer of Philadelphia County as of May Sessions 1960 on bills of indictment Nos. 698 and 699, with directions to promptly hold a hearing, in the presence of the defendant and consistent with the requirements of due process, to determine whether Patrick's alleged confession which was introduced in evidence at his trial on the above mentioned bills was voluntary or involuntary. If Patrick is without counsel at that hearing, the Court shall appoint counsel to represent Patrick in said proceedings. After such hearing, that Court is directed to report its findings and conclusions to this Court for our further consideration.

---

\* Believing that the Supreme Court of the United States intended *Jackson v. Denno* to be retroactive, we so held in *Commonwealth ex rel. Gaito v. Maroney,* 416 Pa., supra; *Commonwealth ex rel. Butler v. Rundle,* 416 Pa. 321, 206 A. 2d 283, and cases cited therein.

Record remanded with directions, and final decision reserved.

Mr. Justice JONES concurs in the result.

Mr. Justice COHEN dissents and would grant a new trial.