Dissenting Opinion by
Spaulding, J.:
I respectfully dissent.
Appellant, Edward Dukeman, was tried by a jury on October 5, 1970 and was convicted of burglary in *80 the Court of Common Pleas of Delaware County. Judge Howard F. Heed, Je. presided.
Appellant was implicated as a tipster in a conspiracy to burglarize an antique and coin shop. One of the actual burglars, testifying for the Commonwealth, stated that appellant advised him and his accomplice of the location of the shop, and that it contained a good deal of gold and some weapons. Appellant also allegedly provided a diagram of the shop, indicating its general layout and the approximate location of guns and a safe. Appellant was purportedly to receive 10-15% of the “take” in return for this information. The burglary plan was aborted when the sounding of a burglar alarm frightened the would-be thieves away.
Appellant contends that the jury had access to the daily trial list, which indicated that he (as well as the primary defense witness, Joan Janiszewski) was awaiting trial on other burglary charges. Two weeks after the verdict against appellant had been entered and the jury dismissed, another defense counsel for appellant, defending him in a subsequent case, by chance encountered one of the jurors in the bank where she was a teller. She státed that she had seen the trial list and had been aware of the pending charges during the trial and deliberation. She further stated that other jurors were aware of the other charges due to the posting of the trial list in the corridors of the courthouse. Based on the affidavit of the attorney, averring the contents of his conversation with the former juror, appellant petitioned the court en banc for leave to interrogate the jurors. This petition was denied without prejudice to raising the issue as an additional ground for new trial. Subsequently, the court denied post-trial motions. This appeal was brought.
I find the instant case analogous to the situation in Commonwealth v. McDaniel, 217 Pa. Superior Ct. *81 20, 268 A. 2d 237 (1970). In McDaniel, following the trial and conviction of the appellant for aggravated assault and battery with intent to ravish, a juror advised the court that during their deliberation, the members of the jury had seen a copy of the daily trial list, which indicated that appellant had also been charged with other unrelated offenses. During a conference with the court, several jurors admitted that they had been aware of the other charges as a result of having seen the trial list. Nonetheless, the court denied appellant’s motion for a new trial. In an opinion reversing the lower court, Judge Homan stated: “[T'jhe trial list which indicated that appellant was accused of committing other crimes might well have prejudiced him by predisposing the jurors to believe the accused guilty, thus effectively stripping him of the presumption of innocence ... In summary, the serious potential prejudice to appellant, coupled with the court’s inability to cope with it warrants the granting of a new trial.”
In the instant case, if the facts are as portrayed in the affidavit submitted to the court, this appellant is as much entitled to a new trial as was appellant McDaniel.[1] See Commonwealth v. Free, 214 Pa. Superior Ct. 492, 259 A. 2d 195 (1969). The appellant must at least be given the opportunity to prove the existence of the impermissible influence he alleges.
*82 The court below would distinguish appellant’s situation from that in McDaniel on the basis that the possibility of prejudice engendered by the jury’s access to the trial list came to the court’s attention before the jury had been dismissed, whereas in the instant appeal, the jury had been dismissed and one month had passed before the petition to recall the jury was filed.[2] The trial court supported this distinction by citing a bevy of cases which support the proposition that a jury may not invalidate a verdict by its own testimony.[3] On this authority, the court concluded that not only was the appellant not entitled to a new trial, but that he was not even entitled to question the jurors in regard to their alleged access to the list. This argument is unpersuasive.
The court below is correct in its assertion that public policy requires that we zealously protect the sanctity and finality of jury verdicts. However, public policy, as well as fundamental fairness, also requires that *83 . . every appearance of evil must be avoided and every precaution taken to guard against all matters tending in the slightest degree to corrupt or influence the verdict.” Schankweiler v. Pennsylvania Light Co., 275 Pa. 50, 118 A. 562 (1922) (at 53).
There is a difference between the kinds of encroachments which the cases cited by the trial court prohibited and the attack made in the instant case. In Commonwealth v. Patrick, 416 Pa. 437, 206 A. 2d 295 (1965), there was an attempt to impeach the verdict, after the jury had been discharged, by the affidavit of one juror alleging coercion by the other jurors. Commonwealth ex rel. Darcy v. Claudy, 367 Pa. 130, 79 A. 2d 785 (1951), held that post-trial statements of jurors that they would have sentenced the defendant to life imprisonment instead of the death penalty had he taken the stand in his own defense or produced other evidence of good reputation prior to his affiliation with his co-defendants carry no weight in the consideration of a petition for new trial or habeas corpus. In Commonwealth v. Curry, 298 Pa. 363, 148 A. 508 (1930), our Supreme Court affirmed a trial court’s denial of a motion for new trial based on affidavits alleging that the jurors considered facts not in evidence, and that they had not been able to obtain information which they thought material to their determination. These cases and others cited by the court below deal with interaction among the jurors themselves. I believe them to be inapposite in cases, like the present one, where the alleged impermissible influence emanates from some person or thing outside the exclusive control of the jury itself.
By way of comparison, in Commonwealth v. Zlatovich, 440 Pa. 388, 269 A. 2d 469 (1970), the Supreme Court cited Welshire v. Bruaw, 331 Pa. 392, 200 A. 67 (1938), a civil case, in which a court tipstaff made *84 several comments to members of the jury with the intention of prompting the jury’s decision. Recapping the Welshire holding, the Court said: “In that case, we affirmed the decision of the trial judge in granting a new trial, in view of the inherently coercive effect of the tipstaff’s conduct on the jury’s deliberation. More pertinently, we also held that the jurors were competent to testify as to the improper conduct of a third party whose actions may have tended to affect their verdict and deliberations.” [Emphasis theirs.] The Court summarized the law with regard to post-trial testimony of jurors, stating that: “. . . while we permit discharged jurors to testify as to the existence of outside influences during their deliberation, nevertheless, we prohibit them from testifying as to the effect which these extra-evidentiary influences had upon the jurors in reaching a decision, just as we prohibit jurors generally from recounting the mental processes whereby the jurors arrived at their verdict. . . .”
The above-quoted language makes it clear that the doctrine prohibiting a jury’s impeachment of its own verdict does not preclude the appellant from questioning the jurors, under the court’s supervision, about their access to the trial list. The trial list was certainly an “outside influence” within the meaning of the Zlatovich opinion. Further, it is unnecessary for appellant to question the jurors about whether, assuming they saw the list, their knowledge of the charges pending against the appellant affected their deliberation in any manner. Barring other overwhelming factors, the mere prejudicial potential of such matter would require the granting of a new trial. Commonwealth v. McDaniel, supra; Commonwealth v. Allen, 212 Pa. Superior Ct. 314, 242 A. 2d 901 (1968).
Finally, the trial court’s assessment that, even if the jurors did have access to the trial list, the appel *85 lant was not prejudiced thereby, since the jury could have reasonably inferred from testimony elicited by defense counsel that appellant had other burglary charges against him, must be rejected.
The Commonwealth’s case rested upon the testimony of one Jerome John McKenney, whom the court below characterized as: “. . . an admitted and convicted felon, who admittedly faces trial on other charges. He portrayed himself as a former member of an extensive burglary ring, now engaged in redeeming his soul and cleansing his conscience, by confessing to all the crimes he had been involved in, naming his accomplices and associates in crime.” Defense counsel attempted to show that McKenney was arbitrarily implicating people in crimes in order to gain leniency in sentencing. One example of counsel’s attempt to discredit McKenney’s assertions of a criminal liason among himself, the appellant, and others is the following: “Q. . . . Can you give us any places or any locations where you were in the company with Miss Janiszewski and Mr. Dukeman was present; can you give us anyone else who might have seen you together? [McKenney named several persons] Q. All right, can you recall . . . you recalled other names, can you recall other general locations where you may have been present with Miss Joan____? A. I am not allowed to talk about other crimes, can I? Q. I don’t think you have stopped since you started testifying. You haven’t heard me objecting. If you want to go ahead, Mr. McKenney, let’s hear what you have to say. A. Well, Miss Janiszewski was with Mr. Dukeman and myself, Mr. Seagraves, Mr. Louis Falls in Delaware when we pulled an armed robbery down there. Miss Janiszewski was with Mr. Dukeman, Mr. Seagraves, Mr. Barker, Mr. Pettronie and this colored fellow Slim and myself when we pulled an armed robbery in Nether Providence. Q. Let me ask you this *86 Mr. McKenney, I don’t quite know how to put it but are there any people that might be termed legitimate people or people that don’t have any convictions or arrests or anything that you could name that saw you and Joan together in the company of Mr. Dukeman? A. No, the only time we were together, it was usually hooked up with criminal activities and honest people aren’t usually around then.” At another point in the trial, on direct examination, defense counsel questioned one Stephen Balogh concerning statements allegedly made by Mr. McKenney: “Q. And what was the conversation regarding Mr. Dukeman? A. Well, actually he was talking about a man named Hans and Dukeman I believe at the same time, you know, he was talking about them both and he had said he was going to put Duke-man in prison on crimes even though he didn’t do them.”
The trial court contends that this and other testimony adduced by defense counsel put the jurors on notice that appellant had probably been charged with other crimes, and that therefore, appellant could not have been prejudiced by anything in the trial list. I disagree.
So great is the presumption that evidence of other crimes is prejudicial to the defendant that we should not assume it to be rebutted by anything of lesser impact or credibility than the incompetent or extra-evidentiary evidence itself. See Commonwealth v. Trowery) 211 Pa. Superior Ct. 171, 235 A. 2d 171 (1967). There is a significantly greater prejudicial impact where a jury knows that a defendant has actually been indicted for certain crimes than where implication in other criminal activity comes from a convicted felon who obviously has much to gain from cooperating with the legal authorities. Moreover, although defense counsel assumed a risk of raising inferences of other criminal *87 activity by pursuing the line of questioning that he did, he could not reasonably expect that that risk would be compounded by incompetent evidence of charges pending against the appellant. Thus, it is my conclusion that if the jurors did read the list, the possibility of prejudice cannot be overlooked in this instance.[4]
For the reasons stated above, I would hold that the trial court abused its discretion in denying appellant an opportunity to interview the jurors. I would remand for interrogation of the jury to determine whether a new trial is necessary.
Hoffman, J., joins in this dissenting opinion.

 The Commonwealth would distinguish McDaniel from the instant case on the grounds that in McDaniel, the juror went directly to the court to advise it of the improper evidence, whereas here, the statement of the juror was related to the court through the affidavit of an attorney. I think the distinction is insignificant. We cannot always expect jurors to be as conscientious as the one in McDaniel; they cannot be expected to be aware of all the rights to which a defendant is entitled, or to be mindful of how incompetent evidence may prejudice their thinking. Where substantial rights are involved, I think the court must consider the affidavit of any competent and reliable source.

 Although the promptness with which a claim that a jury was exposed to extra-judicial influences may be a valid consideration in determining the credibility to be attached to such a claim, the amount of time elapsing between the dismissal of the jury and the raising of the claim before the court should not, in and of itself, preclude a hearing on the issue. Here, the delay in petitioning the court for leave to interrogate the jurors has been explained by the fact that grounds for this request did not come to light until more than two weeks after the verdict had been entered. There has been no indication that the affidavit of the attorney was not truthful, or that the alleged statement of the former juror was provoked by any misconduct on the part of appellant or his attorneys.

 Cluggage v. Swan, 4 Binney 150, 158 (1811); Commonwealth v. Greevy, 271 Pa. 95, 99, 114 A. 511, 512 (1921) ; Commonwealth v. Curry, 298 Pa. 363 (1930) ; Friedman v. Ralph Brothers, Inc., 314 Pa. 247, 249, 171 A. 900, 901 (1934) ; Redmond v. Pittsburgh Railways Company, 329 Pa. 302, 303, 304, 198 A. 71, 72 (1938) ; Commonwealth ex rel. Darcy v. Claudy, 367 Pa. 130, 79 A. 2d 785 (1951), 130 F. Supp. 270, 224 F. 2d 504, 351 U.S. 454, 100 L. Ed. 771, 76 S. Ct. 965 (1956) ; Commonwealth v. Patrick, 416 Pa. 437 (1965).

 I do not believe that this is harmless error under standard pronounced in Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967). If the jurors gained knowledge of other offenses from the trial list, that knowledge affected a “substantial right”, appellant’s right to a presumption of innocence. Further, in light of the absence of any physical evidence against the appellant, and the difference in the nature of the two sources from which the jurors could have inferred other offenses, I think there is certainly a “reasonable possibility that the evidence complained of might have contributed to the conviction”.