## Commonwealth *v.* Peterson, Appellant.

Argued March 15, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*John H. Corbett, Jr.*, Assistant Public Defender, with him *John J. Dean*, Assistant Public Defender, and *George H. Ross*, Public Defender, for appellant.

*Robert L. Eberhardt*, Assistant District Attorney, with him *Robert W. Duggan*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, July 2, 1973:

Appellant, Raymond Peterson, was indicted, together with several alleged accomplices, on counts of armed robbery, receiving stolen goods and violation of the Uniform Firearms Act. Pretrial motions to suppress identification testimony and for separate trials on the two indictments were denied and a jury trial was held in the Court of Common Pleas of Allegheny County. The trial judge sustained appellant's demurrers to all charges except the two counts of armed robbery. On these charges the jury returned verdicts of guilty. Motions for a new trial were denied, and Peterson was sentenced to two concurrent terms of from three and one-half to seven years imprisonment. An appeal to the Superior Court resulted in a per curiam affirmance, *Commonwealth v. Peterson*, 222 Pa. Superior Ct. 747, 294 A. 2d 741 (1972). This Court granted allocatur.[1]

The facts pertinent to the first indictment are as follows: Around 10 a.m. on October 24, 1970, two men entered the Foodland Market in Oakmont and asked for the manager ostensibly to purchase money orders. The men accompanied the manager to his office, whereupon one of them produced a pistol and demanded money. The manager complied and the robbers fled

---

[1] Although appellant objected to the in-court identifications made by six witnesses, the correction of the suppression judge's decision was irrefragable and thus allocatur was limited to the issue of whether or not it was proper to consolidate these indictments in a single trial.

with $3500. A witness, Edward Kaminski, saw the men enter an orange colored car with a black vinyl top. He noticed the third digit of the license number was "N" and the last two were either "35" or "53". In addition to the manager, three other store employees witnessed the robbery and all identified Peterson at trial as one of the perpetrators.

Evidence relevant to the second indictment indicates that on the evening of October 24, 1970, four men in what was described as a rust-colored car with a black top parked on Franklin Avenue in Wilkinsburg. Three alighted and entered the Little General Store. Having first asked to cash checks, one of the group then pulled out a sawed-off shotgun and demanded money. They fled with $14 from the two cash registers and $8 or $9 from an employee. A clerk tripped the alarm summoning police who arrived as the robbers were entering their get-away car. A high speed chase ensued which ended when the robbers' car crashed. Three men, including appellant, were apprehended at or near the scene of the accident. The car contained a sawed-off shotgun and twenty one dollar bills. A .30 calibre revolver was found on the ground beneath the auto. The car bore the license number "14N-135". Mr. Kaminski subsequently identified the car as the one used in the Oakmont robbery. At trial, two employees of this store identified Peterson as one of the robbers.

Peterson's counsel made timely motions for severance prior to and again at trial and assigned the lower court's declination as error in post-trial motions and in this appeal. The contention is that prejudice arose from the fact that Peterson wished to testify concerning the Oakmont robbery, but also desired to remain silent on the charge stemming from the Wilkinsburg hold-up. Since he did not wish to expose himself to cross-examination on the latter crime, he did not testify at all. It is also asserted that consolidation permitted

192

the jury to accumulate the evidence of the crimes and infer criminal disposition from which guilt was ultimately found.

At the outset we are constrained to note the absence in this jurisdiction of any rule of criminal procedure covering the joining and severing of two or more indictments. Pa. R. Crim. P. 219(b) is confined by its language to situations where "two or more offenses" are charged *"in the same indictment"*.

In order to facilitate our disposition of this appeal, we adopt the approach to the consolidation of indictments embodied in Fed. R. Crim. P. 13, which provides: *"The court may order two or more indictments, or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."* [Emphasis supplied.][2]

Adoption of the federal approach returns the instant problem to the orbit and influence of the Pennsylvania Rules of Criminal Procedure, since we consider the consolidation of two indictments to be proper

[2] The more inclusive counterpart of Pa. R. Crim. P. 219(d) is Fed. R. Crim. P. 14 which provides: "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial." If the original joinder was improper, Rule 14 confers no discretion. In that event a severance must be ordered, and failure to sever constitutes reversible error. Rule 14 comes into play only if the original joinder was proper. It permits a severance, despite the propriety of the original joinder, if needed to avoid prejudice.

if the same offenses could have been properly joined in a single indictment [the situation governed by Rule 219(b)].

Pa. R. Crim. P. 219(b) specifically permits joinder of "[t]wo or more offenses . . . in the same indictment if [the offenses] are of the same or similar character." Here, as the Commonwealth's brief characterized the similarities in these two offenses, there were (1) two robberies (2) of two grocery stores (3) located five to seven miles from each other (4) within twelve hours, by several persons (5) using an orange-colored automobile with a black top as a get-away car. Unquestionably, these similarities satisfy the standards for joinder. See *Drew v. United States*, 331 F. 2d 85 (D.C. Cir. 1964).[3]

However, the fact that these offenses were of similar character, closely related in time, place and manner of execution, and hence could have been properly joined in the first instance does not settle matters. Our next and principal concern must be whether appellant, as asserted, was prejudiced as a result of the joint trial.

As a general proposition it is well established that the grant or denial of severance is a matter of discretion with the trial judge, whose conclusion will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Patrick*, 416 Pa. 437, 206 A. 2d 295 (1965). See also *Sullins v. United States*, 389 F. 2d 985 (10th Cir. 1968); *Dobbins v. State*, 483 P. 2d 255 (S. Ct. Wyo. 1971).

---

[3] See also *Johnson v. United States*, 356 F. 2d 680 (8th Cir. 1966), joinder of multiple violations of the Mann Act over a four-month period involving different females, held proper; *Pummill v. United States*, 297 F. 2d 34 (8th Cir. 1961), bank robberies ten months apart in two different towns held properly joined in the same indictment.

The cases and treatises have taken special cognizance of three kinds of prejudice that may occur if separate offenses—and particularly those that are merely of "similar character" and do not arise out of a single trasaction—are joined. These are: (1) defendant may become embarrassed or confounded in his defense; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt, when, if considered separately, it would not so find. See *Drew v. United States,* supra, and 1 Wright, Federal Practice and Procedure §222.

We turn to the allegation that appellant was embarrassed and confounded in his defense since he wished to testify on one charge but not on the other. It is important to note that although Peterson asserted in his motion for severance that he wished to testify concerning the Oakmont robbery but remain silent on the other charge, he never indicated the nature of the testimony he wished to give on the first indictment.

While we are strenuously urged to follow the holding of *Cross v. United States,* 335 F. 2d 987 (D.C. Cir. 1964), our own view is that appellant reads that case too broadly. There, in a joint indictment, Cross and another were charged in Count 1 with robbery of a church rectory on February 23, 1962, and in Count 2 with robbery of a tourist home on May 2, 1962. The theory of joinder was similar transactions and motions for severance were denied. The jury convicted him on Count 1 and brought in an acquittal on Count 2. At trial Cross did not specify the count upon which he wished to remain silent and the reasons therefor, but unlike Peterson, he ultimately testified on both counts. On appeal he asserted he had wished to remain silent about the church robbery but testify about incidents at the tourist home.

The Court of Appeals for the District of Columbia reversed and ordered a new trial, holding that defendant's motion for severance under Rule 14 should have been granted. The court recognized that to have testified on only one count would have accentuated a failure to testify on the other and that Cross's only alternative was to present weak testimony on Count 1. It was therefore concluded Cross had been coerced to testify by the joinder of similar transactions; the fact of joint trial, in effect, had rendered him unable to remain silent on Count 1.

Proceeding from a factual situation which is the converse of *Cross*, Peterson's argument is that in addition to the right to remain silent, one accused of crime also has the right to testify in his own behalf and therefore he was coerced into silence on the Oakmont robbery by the instant consolidation.

However, in *Baker v. United States*, 401 F. 2d 958 (D.C. Cir. 1968), the same circuit court took occasion to comment on, and in certain ways limit, the *Cross* decision.

Baker was convicted on seven counts of a nine-count indictment charging offenses of income tax evasion and larceny. In his appeal he argued, inter alia, that severance should have been granted since he wished to testify as to some counts and remain silent on others.

In its opinion the court stressed the element of discretion with regard to the grant of severance, inhering in the trial judge, saying at pp. 976-77:

"Appellant cites Cross for the proposition that 'a timely and bona fide election by the accused to testify as to some counts and not as to others requires a Rule 14 severance.' We think this reading of Cross is far too broad. Such a rule, in fact, would divest the court of all control over the matter of severance and entrust it to the defendant.

". . . [N]o need for a severance exists until the defendant makes a convincing showing that he has

both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other —to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying."[4]

While it is obvious that Peterson's need to refrain from testifying on Indictment No. 8871 stemmed from the fact that he was caught red-handed and any exculpatory testimony would thus sound contrived and be patently incredible, the lower court could only speculate as to the nature of the testimony he had to give concerning Indictment No. 8071 [Oakmont] since no informational proffer was made in appellant's behalf. The contention that Peterson's defense was embarrassed and confounded fails for want of proof.

If prejudice is held to erupt the moment a defendant asserts he wishes to testify on some but not all of the charges, then clearly control of severance has passed out of the hands of the trial court and into the control of the defendant. While the absolute right to

---

[4] See also *Robinson v. United States*, 459 F. 2d 847 (D.C. Cir. 1972) and *Bradley v. United States*, 433 F. 2d 1113 (D.C. Cir. 1969). In *Bradley*, a defendant charged with two counts of housebreaking asserted that he wished to testify defensively on only one charge and requested severance. The court held the evidence as to each count was mutually admissible on trial of the other and upheld the denial of severance. With regard to the assertion that defendant wished to remain silent on one charge, Judge Spotswood ROBINSON said: "If . . . a defense to that charge was planned, it was counsel's duty to so advise the trial judge in order that he could with greater intelligence exercise his discretion in the matter." 433 F. 2d at 1124.

severance is advocated in some quarters, it is not provided in either the state or federal rules. This Court has consistently ruled the grant or denial of severance is a matter for the trial court's discretion.[5]

Appellant's second contention is that he was prejudiced by the "probability" the jury used the evidence of the one crime to convict him of the other or cumulated the evidence to find guilt under both charges.

This brings us at once to the second and third kinds of prejudice that may occur when offenses of a similar character are joined.

It is black letter law that evidence of one crime is inadmissible against a defendant being tried for another crime because the fact of the commission of one offense is not proof of the commission of another. See *Commonwealth v. Foose*, 441 Pa. 173, 272 A. 2d 452 (1971). However, there sometimes exist special circumstances which operate as exceptions to the general rule and bring the case within the equally well established principle that evidence of other crimes is admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of

---

[5] The ABA Project on Minimum Standards for Criminal Justice Standards Relating to Joinder and Severance §2.2 would give such an absolute right, for it is therein provided: "Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." Enactment of such a rule would obviate many of the present difficulties with "similar transaction" joinder which are fully discussed in Note, Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure. 74 Yale L.J. 553 (1965) and in Comment, Joinder of Counts as a Violation of an Accused's Right to Remain Silent, 41 Temp. L.Q. 458 (1968).

the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. See *Commonwealth v. Wable*, 382 Pa. 80, 114 A. 2d 334 (1955). When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value.[6]

Although we conclude that notwithstanding any exception to the rule relating to other crimes, the evidence of each of these particular crimes would not have been admissible in a separate trial for the other,[7]

---

[6] As the Court explained in *Bradley v. United States*, supra, 433 F. 2d at 1118: "[W]here, 'under the rules relating to other crimes, the evidence of each of the crimes on trial would be admissible in a separate trial for the other, the possibility of "criminal propensity" prejudice would be in no way enlarged by the fact of joinder.' This is so for the rather obvious reason that '[i]n such cases the prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would, be no different from that possible in separate trials.' Consequently, where evidence of joined offenses would be mutually admissible in separate trials of those offenses, severance is not ordinarily required on account of 'criminal propensity' prejudice. And this precept 'does not require that every item of evidence relating to one offense be admissible in a separate trial for the other, but rather looks in a broader sense to whether the rules relating to "other crimes" evidence have been satisfied.' "

[7] It is obvious beyond need of discussion that evidence of other crimes could not have been introduced at separate trials of either indictment to show motive, intent or absence of mistake or accident. Nor do the facts surrounding these crimes show that there is a reasonable probability the same person committed both offenses due to a concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed.

Armed robbery is often a fungible commodity and there is very little evidence overlap instantly. There was no particularly unusual or distinctive modus operandi. Although witnesses in both stores identified Peterson at trial, it was because they recalled

we do not believe that reversal of the instant case is either warranted or mandated, as appellant conceives, by *Drew v. United States*, supra.

In *Drew*, supra, the Court of Appeals for the District of Columbia recognized that joinder of similar offenses will often cause prejudice through the introduction of evidence which fails to meet the "other crimes" test. There the defendant was indicted for the robbery of a store on July 27, 1962, and for the attempted robbery of a similar store on August 13, 1962. Joinder of the two crimes met the requirements of Rule 8(a) [similar offenses] but because the two fact situations were not similar enough to meet the qualifications of the other crimes rule, the failure of the trial court to grant separate trials was held to be reversible error. The court reasoned that prejudice had occurred in the joint trial because the evidence relating to the two offenses might have been confused by the jury. It cited cases which upheld joinder because all the evi-

his face rather than any one peculiar feature about him. Some witnesses from the Oakmont store remembered Peterson being dressed totally in black, including black gloves which they thought unusual in light of warm weather conditions. By way of contrast, an eyewitness at the Wilkinsburg store simply remembered the robbers being dressed in "beautiful clothes". In the first robbery a pistol was brandished. In the second, a shotgun was produced. The evidence overlaps only to the extent that the get-away car in both instances was identified as a rust or orange-colored model with a black top. Additionally, the pistol found beneath the car at the time of apprehension was identified by the manager of the Oakmont store as being exactly like the gun pulled on him. Nor were the instant crimes examples of common plan or scheme so related that proof of one tends to prove the other. In the appeal of Peterson's codefendant, William Jackson, Mr. Justice O'BRIEN wrote for the Court. "[E]ven assuming that Wilkinsburg and Oakmont are 'in the same neighborhood' there was no proof offered that the crimes in question were the product of a common scheme or of a continuing conspiracy between appellant and his codefendants". *Commonwealth v. Jackson*, 451 Pa. 462, 303 A. 2d 924 (1973).

dence admitted in the joint trial would have been admitted in single trials, and inferred the converse: when evidence admitted in the joint trial would be inadmissible in separate trials, joinder is improper under Rule 14.

However, the appeals court also recognized that in certain instances of similar offense joinder when the admissibility test is not met but the evidence is capable of separation by the jury, the danger of confusion is not present and joinder is permissible. The present case, we believe, falls squarely within this exception.

In this regard the court was relying on *United States v. Lotsch,* 102 F. 2d 35 (2d Cir.), cert. denied, 307 U.S. 622, 59 S. Ct. 793 (1939). There Judge Learned HAND said (102 F. 2d at 36) : "There is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all. This possibility violates the doctrine that only direct evidence of the transaction charged will ordinarily be accepted, and that the accused is not to be convicted because of his criminal disposition. Yet in the ordinary affairs of life such a disposition is a convincing factor, and its exclusion is rather because the issue is practically unmanageable than because it is not rationally relevant. When the accused's conduct on several separate occasions can be properly examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury. . . . Here we can see no prejudice from joining the three charges: the evidence as to each was short and simple; there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each. The joinder was therefore proper. . . ."

Instantly, the evidence as to each charge was relatively simple and distinct. The only question in the case was one of identity; the four witnesses from Oakmont and the two from Wilkinsburg either were or were not credible. Our study of the record also convinces us that the lower court tried this matter very carefully. The trial judge informed the jury at the outset that they were in effect trying two separate cases at one time and for this reason would have to pay especially close attention to the evidence so as to be able to properly segment it. At the close of trial an extensive cautionary instruction was given which again directed the jury to confine the relevant evidence to each offense. This instruction was precise and unassailable.

Order affirmed.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the result reached by the Court because from my review of the record I am satisfied that the test of Pennsylvania Rule of Criminal Procedure 219 (b)—"transactions connected together or constituting parts of a common scheme or plan"—is here met. That is to say, I believe that the robberies of these two grocery stores, about five miles apart on the eastern periphery of metropolitan Pittsburgh, show a common scheme, plan or design, and that Peterson's identity as a perpetrator of the second robbery (where he was caught red-handed) is probative in establishing that he was also a perpetrator of the first. Not only were the crimes closely related in time and space, but the getaway car in both was described as orange with a black vinyl top. At the Oakmont robbery it was said to have a license plate with a third digit of "N" and last two digits of either "35" or "53", while at Wilkinsburg it was found to have the license "14N135". At Oakmont

a pistol was brandished while in Wilkinsburg it was a shotgun; a pistol, however was found under the seat of the getaway car used in Wilkinsburg. Finally, Peterson was identified at trial by witnesses present at both robbed stores. In short, if this case does not satisfy the requirements of Rule 219(b), then I would be at a loss to know what would.

I therefore find it unnecessary to decide whether joinder of offenses under Rule 219 is permissible beyond the scope of the common scheme, plan or design exception to the evidentiary rule that a man's past misconduct is not relevant in establishing his conduct on a later occasion.[1]

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am compelled to dissent from the patently anomalous result produced by the majority's opinion today.

Appellant was charged in two separate indictments with two separate and distinct robberies. Notwithstanding his timely motion for severance of these offenses, appellant was tried for both robberies in one

---

[1] The majority may have held the two robberies here to be not part of a common scheme, plan or design because of the following language in *Commonwealth v. Jackson*, 451 Pa. 462, 303 A. 2d 924 (1973): "However, even assuming that Wilkinsburg and Oakmont are 'in the same neighborhood', there was no proof offered that the crimes in question were the product of a common scheme or of a continuing conspiracy between appellant and his co-defendants." The holding in *Jackson*, however, did not conclude the question of a common scheme, plan or design here. Jackson was not charged with the Oakmont robbery and there were no circumstances to indicate that an unknown man (other than Peterson and Taylor), who might have been Jackson participated in the Oakmont robbery. As the *Jackson* opinion states, "[as] between *appellant* [Jackson] and his co-defendants . . . there was no proof . . . that the crimes in question were . . . a common scheme." That statement, in my view, does not hold true for Peterson, who was apprehended fleeing the second robbery and identified as a participant in the first.

trial. The majority, in its opinion, concludes that although "evidence of each of these particular crimes would not have been admissible in a separate trial for the other," it was not error for the trial court to deny appellant's timely motion for severance, and to try these offenses in a single trial.

This result is both illogical and untenable. As the majority concedes, due to the potential for prejudicing the jury, "evidence of one crime is inadmissible against a defendant being tried for another crime because the fact of the commission of one offense is not proof [with certain limited exceptions] of the commission of another." See *Commonwealth v. Foose*, 441 Pa. 173, 272 A. 2d 452 (1971). Thus, the majority would not have permitted evidence of the first robbery, here, to be introduced at a single *separate* trial for the second robbery, because of potential prejudice to the defendant. Yet the majority does allow, by its decision today, evidence of *both crimes* to be admitted in a single *joint* trial. It is inconceivable that the prejudice inherent in admitting evidence of one robbery at a separate trial of the second robbery dissipates simply because both robberies are joined for a single trial. Indeed, the opposite would appear to be more likely. It would be both anomalous and contradictory to permit consolidation of two crimes in one trial when evidence of one crime would not be admissible at a trial of the other crime if tried separately. Since the same danger of prejudice inhers in both situations, the defendant should be granted separate trials when he requests it.

Moreover, as the United States Court of Appeals for the District of Columbia stated in *Drew v. United States*, 331 F. 2d 85, 88 (D.C. Cir. 1964), prejudice inures to the defendant in this type of situation because a "jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of

the defendant from which is found his guilt of the other crime or crimes charged," or the "jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find."

The more logical and certainly the more just rule is that where, as here, a defendant is charged with two separate and distinct offenses, so dissimilar that it would be prejudicial error to admit evidence of one offense at a separate trial of the other, that defendant should have, on timely motion, an absolute right to severance of the offenses. The American Bar Association's Standards Relating to Joinder and Severance categorically supports this view by providing for an *absolute* right to severance in cases of this nature. "Whenever two or more offenses have been joined for trial solely on the grounds that they are of the same or similar character, *the defendant shall have a right to a severance of the offenses.*" (Emphasis added.) American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance, §2.2 (Approved Draft, 1968).

This rule would not eliminate the discretion of the trial judge to grant severance upon timely motion by the defendant. It would, however, restrict the exercise of that discretion to situations where the offenses involved were similar enough to meet the "other crimes" test, or where such offenses arose out of the same transaction, occurrence, or episode. Compare *Commonwealth v. Campana,* 452 Pa. 233, 304 A. 2d 432 (1973).

Indeed, a review of the relevant case law convinces me that this rule is, in fact, to a great extent, being followed today. Thus, where offenses joined in a single trial have a common scheme, plan, or design sufficient to meet the other crimes test, or arose out of the same criminal transaction, occurrence, or episode, courts have found no abuse of discretion in denying a defendant's

motion for severance. See, e.g., *Bradley v. United States,* 433 F. 2d 1113 (D.C. Cir. 1969); *United States v. Lee,* 428 F. 2d 917 (6th Cir. 1970), cert. denied, 404 U.S. 1017, 92 S. Ct. 679 (1972); *Baker v. United States,* 401 F. 2d 958 (D.C. Cir. 1968), cert. denied, 400 U.S. 965, 91 S. Ct. 367 (1970); *Commonwealth v. Patrick,* 416 Pa. 437, 206 A. 2d 295 (1965). However, where the crimes have been separate and distinct, it has been held prejudicial error to deny defendant's motion for severance. See, e.g., *Gregory v. United States,* 369 F. 2d 185 (D.C. Cir. 1966), cert. denied, 396 U.S. 865, 90 S. Ct. 143 (1969); *Cross v. United States,* 335 F. 2d 987 (D.C. Cir. 1964); *Drew v. United States,* supra.

Accordingly, the two robberies, here, being separate criminal occurrences or episodes, appellant's timely pretrial motion for severance should have been granted.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissenting opinion.